## CAROLYN V. OLSON v. JACK C. HANSEN.

216 N. W. 2d 124.

March 22, 1974—No. 44185.

*Coulter, Nelson & Sullivan,* V. *Owen Nelson,* and *George A. Beck,* for appellant.

*Murnane, Murnane, Battis & Conlin* and *Thomas M. Conlin,* for respondent.

Heard before Knutson, C. J., and Peterson, Todd, and Yetka, JJ., and considered and decided by the court.

TODD, JUSTICE.

Plaintiff, Carolyn V. Olson, appeals from an order denying her motion to set aside certain findings of a special verdict and to enter judgment notwithstanding the verdict, or, in the alternative, to grant a new trial, and from the judgment entered in favor of defendant, Jack C. Hansen. Plaintiff's claim for damages arose out of a single vehicle snowmobile accident. In response to special interrogatories, the jury attributed 50 percent of the negligence causing the accident to each party. The trial court entered judgment for defendant. We reverse.

The facts of this case are not disputed. The accident occurred on March 15, 1969, on Big Island in Lake Minnetonka. Defendant had invited plaintiff to be his guest for an afternoon of snowmobiling with Dennis and GeorgeAnn Kilbane. After meeting at Tonka Bay Boat Works and stopping briefly at the Kilbanes' summer home on Big Island, the parties set out to view the sights of the island with the Kilbanes leading and acting as guides.

The Kilbanes, on a larger snowmobile and traveling much faster than the parties, disappeared from sight over the crest of a hill. The parties reached the hill and proceeded to traverse it. As they traversed the hillside, the snowmobile exhibited a tendency to roll. Defendant assumed a semi-standing position in order to see the direction the Kilbanes had gone and to stabilize the machine. He cautioned plaintiff to lean with him, and as he leaned into the hill, she also leaned in that direction. Suddenly the machine rolled to the right and downhill. Defendant was thrown from the driver's position on the machine and rolled some 15 to 20 feet down the hill. Plaintiff attempted to throw herself clear of the machine, but the snowmobile landed on the inner side of her right leg.

Neither plaintiff nor defendant considered her injury to be anything more serious than a bruise. Assuming that it would soon go away, plaintiff did not seek medical assistance until 12 days later.

Plaintiff's condition was diagnosed as deep vein thrombophlebitis. In the opinion of a physician who examined and treated plaintiff and who diagnosed the injury, the phlebitis was a result of the snowmobile accident. Plaintiff presently suffers from a post-phlebitic syndrome.

Before the accident, plaintiff had only been on snowmobiles one or two occasions for very brief periods. Defendant, acquainted with plaintiff's inexperience, had previously instructed her as to the manner of holding on as a passenger and leaning into turns. Defendant had previously ridden this snowmobile about 10 times. Somewhat apprehensive of getting hurt, plaintiff exercised caution during the afternoon of the incident, twice admonishing defendant to be careful and not to proceed too fast.

Plaintiff offered no testimony as to the standard of care to be employed in the operation of a snowmobile. Mrs. Kilbane, an experienced snowmobiler, testified on cross-examination that traversing hills was a hazardous practice, as it increased the

chances of tipping but that a snowmobile could safely go straight up a rather steep hill.

Defendant testified that prior to the incident he did not think the terrain was dangerous. He estimated that the side of the hill was approximately 15 degrees depressed from horizontal. However, after traversing the hill a short distance, he realized that the hill was too steep. He stated that he could have gone down the hill safely. At all times he had exclusive control in the selection of the path.

A special verdict was submitted to the jury covering the issues of the negligence of each party and whether such negligence contributed to cause the accident. The court had refused to instruct on assumption of risk. The jury found each party's negligence contributed 50 percent to cause the accident. The jury determined plaintiff's damages in the amount of $20,000.

As a part of the order denying plaintiff's post-trial motion, the trial court included the following memorandum:

"The decision of the Minnesota Supreme Court in Springrose v. Willmore [292] Minn. [23], 192 N. W. 2d 826 [1971], determined that assumption of risk of the kind involved in the instant case was not to be submitted separately to the jury, but was to be regarded as a mere facet or phase of contributory negligence. That decision, however, was specifically made prospective only.

"In a case apparently identical with the case here under consideration, the Utah Supreme Court held that assumption of risk is not available as a defense under the circumstances of that case —and of the present case. Ujifusa v. National Housewares, Inc., 24 Utah 2d 219, [469 P. 2d 7] 42 A. L. R. 3d, 1417.

"This Court at the time of submitting the case to the jury was persuaded by Ujifusa and did not submit assumption of risk as a separate defense. *Under the facts of the present case, it seems clear that there could have been no contributory negligence except in the form of an assumption of risk by plaintiff.* The jury found negligence and causation in the case of both plaintiff and

defendant, and apportioned that causative negligence at 50 percent to each. This may, indeed, seem like a prospective application of Springrose which would be impermissible because of the express prohibition of such set forth in that case.

"The Court is persuaded that the jury verdict was based on a finding of assumption of risk. Such a finding would, in any event, have been a bar to recovery by plaintiff. If, as seems unlikely, the jury finding of contributory negligence is based on some other act of plaintiff (such as, perhaps, her leaning towards the spill rather than towards the hill) the result would similarly be a bar to recovery. The Court, accordingly, is permitting the verdict to stand." (Italics supplied.)

■ After carefully reviewing the record, transcript, and argument of counsel, we are in full agreement with the trial court and hold as a matter of law that there is no contributory negligence. There is not even a suggestion in the evidence that plaintiff failed to do everything as instructed, including leaning into turns and the hill.

■ The single issue before this court is whether the verdict can stand as a proper application of the doctrine of assumption of risk. Assumption of risk has two separate and distinct concepts: Primary and secondary assumption of risk.[1] Primary assumption of risk is not so much an affirmative defense as an expression of the idea that the defendant owes a limited duty of care to the plaintiff with respect to the risk incident to their relationship. Secondary assumption of risk is an affirmative defense to an established breach of duty which may only be raised when the plaintiff has voluntarily chosen to encounter a known and appreciated danger created by the negligence of the defendant.

---

[1] See, generally, Meistrich v. Casino Arena Attractions, Inc. 31 N. J. 44, 155 A. 2d 90 (1959); 2 Harper & James, Torts, § 21.1; Prosser, Torts (4 ed.) § 68; James, *Assumption of Risk*, 61 Yale L. J. 141; Note, 56 Minn. L. Rev. 47.

Primary assumption of risk is applicable only where parties have voluntarily entered a relationship in which plaintiff assumes well-known, incidental risks. As to those risks, the defendant has no duty to protect the plaintiff and, thus, if the plaintiff's injury arises from an incidental risk, the defendant is not negligent. We have recognized such a limitation on the duties owed licensees upon another's property, e. g., Sandstrom v. The AAD Temple Bldg. Assn. Inc. 267 Minn. 407, 127 N. W. 2d 173 (1964) ; or patrons of inherently dangerous sporting events such as baseball, Aldes v. St. Paul Ball Club, 251 Minn. 440, 88 N. W. 2d 94 (1958) ; and hockey, Modec v. City of Eveleth, 224 Minn. 556, 29 N. W. 2d 453 (1947).

Defendant contends that tipping or rolling is a natural incident of the sport of snowmobiling. Although this may be a hazard in the activity, it is one that can be successfully avoided. A snowmobile, carefully operated, is no more hazardous than an automobile, train, or taxi.[2] See, Ujifusa v. National Housewares, Inc. 24 Utah 2d 219, 469 P. 2d 7, 42 A. L. R. 3d 1417 (1970). We refuse to apply the doctrine of primary assumption of risk to the relationship existent between the driver and passenger of a snowmobile.

■ In Springrose v. Willmore, 292 Minn. 23, 192 N. W. 2d 826 (1971), we determined that secondary assumption of risk was to be considered as a phase of contributory negligence, to be submitted with and apportioned under the comparative negligence statute, Minn. St. 604.01. Being prospective only, the Springrose decision was inapplicable to the determination of this action.

The trial court was convinced that the jury based its answers to the special interrogatories on a finding of assumption of risk. Such an application of the doctrine was not only impermissible

[2] We also reject the view that a snowmobile is a dangerous instrumentality per se. Despite being a relatively neoteric form of recreation and transportation, snowmobiling is no more beclouded in mystery and danger than aviation. See, Lange v. Nelson-Ryan Flight Service, Inc. 263 Minn. 152, 116 N. W. 2d 266 (1962).

prior to Springrose, but was achieved, if the jury in fact employed it, without the benefit of the court's instructions as to the elements and scope of the doctrine. Such a result may not stand.

The essential element of secondary assumption of risk is the plaintiff's voluntary choice to encounter a known and appreciated danger created by the negligence of the defendant. Coenen v. Buckman Bldg. Corp. 278 Minn. 193, 153 N. W. 2d 329 (1967); Schrader v. Kriesel, 232 Minn. 238, 45 N. W. 2d 395 (1950). The knowledge required is actual knowledge, not constructive notice or knowledge. Coenen v. Buckman Bldg. Corp. *supra.* The evidence here is quite clear. Plaintiff had no knowledge of the danger being encountered, either through prior experience or warning by the defendant. Thus, she could not have assumed the risk of that danger.

There being no evidence of contributory negligence and the issue of assumption of risk having been properly excluded from the jury's consideration, the trial court's denial of plaintiff's motion to set aside certain findings of the special verdict and to enter judgment notwithstanding the verdict was erroneous. This action is therefore reversed and remanded to the district court with instructions to enter judgment for plaintiff.

Reversed and remanded.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.