Robert L. ISKER, Respondent,

v.

Roger GARDNER, Respondent,

Scorpion Industries, Inc., Appellant.

No. C6-84-643.

Court of Appeals of Minnesota.

Jan. 15, 1985.

Howard P. Helgen, John V. Norton, Minneapolis, for Robert L. Isker.

Robert C. Bell, St. Paul, for Roger Gardner.

Steven Jamar, Minneapolis, for Scorpion Industries, Inc.

Heard, considered and decided by LANSING, P.J., and HUSPENI and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Appellant Scorpion contends the trial court erroneously granted plaintiff's motion for judgment notwithstanding the verdict. Appellant asserts there was sufficient evidence presented at trial to support the jury's finding that respondent Isker was contributorily at fault for injuries he sustained as a passenger on a snowmobile. We reverse.

## FACTS

After dark on the evening of December 8, 1978, respondent Robert Isker sustained severe hand injuries after falling from a snowmobile manufactured by Scorpion Industries, Inc., (Scorpion) and driven by Roger Gardner. Isker brought personal injury claims against Gardner and Scorpion and defendants asserted that fault of Isker contributed to his injuries.

At trial, respondent Isker testified that Gardner navigated the snowmobile past the high school, approaching Marsh Street in the City of Stillwater. According to Isker, Gardner drove the snowmobile over a two to three foot high, hard-packed snowbank as they entered Marsh Street from the south, and Isker lost his balance as the snowmobile's front skis came off the ground. Gardner drove the snowmobile across Marsh Street and jumped an equally high snowbank bordering the north side of the street. Then, Gardner made a 180 degree turn around, headed southbound toward Marsh Street at a speed of approximately 25 or 30 miles per hour, jumped the same snowbank from the opposite direction, and turned eastbound on Marsh Street. Gardner testified that he approached Marsh Street from the south, jumped one snow bank, and made a gradual turn east on Marsh Street.

Isker testified that the entire snowmobile became airborne before landing in the center of Marsh Street, and that he was thrown from the machine. He testified that he had been holding on to Gardner, as well as to a safety handstrap. Gardner testified that Isker did not hold on to him tightly. Gardner also testified: "I know (Isker) wasn't using the strap." In either event, Isker became unseated and his right hand somehow wedged between the track and the suspension system of the rear of the machine. He was dragged approximately 870 feet and sustained serious and permanent injuries to his right hand.

Isker testified that he had experience operating snowmobiles and was familiar with the potential hazards associated with riding snowmobiles. He had completed snowmobile safety training and had a certificate permitting him to operate snowmobiles on public roads.

On September 23, 1983, the jury found by special verdict that respondent Isker had sustained damages of $600,000, and found all parties causally negligent. The jury apportioned their negligence as follows: Respondent Isker 17%, respondent Gardner 68%, and appellant Scorpion 15%.

The trial court subsequently granted Isker's motion for judgment notwithstanding the verdict, ruling as a matter of law that Isker was not at fault, and reapportioned his percentage of fault between Gardner and Scorpion. Scorpion appeals.

## ISSUE

Was sufficient evidence presented at trial to support the jury's finding that respondent, a snowmobile passenger, was negligent with regard to his own safety?

## ANALYSIS

The applicable standard to be applied by the trial court in determining the propriety of granting a motion for judgment notwithstanding the verdict is whether there is any competent evidence reasonably tending to support the verdict. * * * Such a motion "admits every inference reasonably to be drawn from the evidence as well as the credibility of the testimony of the adverse party." * * * Only where the facts are undisputed and reasonable minds can draw but one conclusion from them does the question for determination become one of law for the court.

*Conover v. Northern States Power Company*, 313 N.W.2d 397, 401 (Minn.1981) (citations omitted).

On appeal from an order for judgment notwithstanding the verdict, the evidence is viewed in the light most favorable to the jurors' findings, and the contrary judgment is affirmed only if reasonable minds could not differ that the jury's conclusion was wrong.

*Waite v. American Family Mutual Insurance Company*, 352 N.W.2d 19, 21 (Minn. 1984) (citation omitted).

We see evidence in the record reasonably supporting a finding of 17% fault of Isker in the form of unreasonable action or inaction. The jury might have believed Gardner's testimony that his passenger was neither holding on to him tightly nor using the safety handstrap. The jury also heard evidence denying movement of the

snowmobile that would have thrown Isker from the machine, and suggesting that he did some snow surfing, getting off the machine to trail behind it on the snow.

The parties believe the verdict on limited fault of Isker may have been based partially on a view that Isker negligently assumed risks in not taking special care to avoid falling off the snowmobile. Evidence suggested Isker was familiar with the hazards of careless snowmobile operation and appreciated dangers in a fall during that kind of activity. The record shows no evidence that Isker protested or cautioned Gardner about his manner of driving even though Isker stated that he momentarily lost his balance on the first of three successive jumps over the snowbanks bordering Marsh Street. This evidence is of a kind historically described as secondary assumption of risk.

■ Appropriately, the jury was not given instructions on Isker's assumption of risk. Jurors were asked for findings on his negligence, if any, and they were instructed on negligence standards. This approach of the trial court was in accord with the holding that unreasonable assumption of risk no longer bars recovery by a plaintiff, but may be considered as part of his contributory negligence. *Springrose v. Willmore,* 292 Minn. 23, 192 N.W.2d 826 (1971); *see* Minn.Stat. § 604.01, subd. 1a (1982). In *Springrose,* the court said:

> Our retention of the terminology of implied assumption of risk, although only as an element of negligence, may be an unnecessary precaution in most situations. The only question for submission in the usual case, we think, will be whether the particular plaintiff was, under the circumstances, negligent in regard to his own safety, for under that general issue counsel may fully argue the issue in all its aspects.

*Springrose,* 292 Minn. at 26, 192 N.W.2d at 828.

The trial court decision on assumed risks was stated in its memorandum:

> There was no evidence at trial to suggest that Plaintiff had voluntarily chosen "to encounter a known and appreciated danger created by the negligence of the [D]efendant" (*citing Olson v. Hansen,* 299 Minn. 39, 43, 216 N.W.2d 124, 127 (1974)).

Asserting the same analysis of the law, respondent observes that he could not have known the danger of getting his hand caught in the snowmobile, and could not have known the subsequent danger of being dragged by the machine.

Evidence on secondary assumption of risk has been previously considered in cases dealing with the defense as a bar to recovery.[1] These decisions define secondary assumption of risk as the voluntary choice to encounter known danger created by the negligence of another. *Wegscheider v. Plastics, Inc.,* 289 N.W.2d 167 (Minn. 1980). Among these holdings is one that a plaintiff assumes only those risks actually known, not those he should have known. *Coenen v. Buckman Building Corporation,* 278 Minn. 193, 153 N.W.2d 329 (1967).

■ Because evidence on assumed risks is now a part of other proof of contributory fault, significance arises for proof of risks a plaintiff should have appreciated. Language in *Coenen* foreshadowed this conclusion; the supreme court stated that the defense is "contributory negligence and not assumption of risk" where it merely appears the plaintiff "should or could have discovered the danger * * *." *Id.* at 205, 153 N.W.2d at 338. Thus, the verdict here on Isker's limited fault was reasonably supported in part by evidence on assumed risks.

We are mindful of the decision of the Minnesota Supreme Court in *Olson* quoted by the trial court. There the court overturned a jury decision which apparently

1. *See Wegscheider v. Plastics, Inc.,* 289 N.W.2d 167 (Minn.1980); *Bakhos v. Driver,* 275 N.W.2d 594 (Minn.1979); *Evanson v. Jerowski,* 308 Minn. 113, 241 N.W.2d 636 (1976); *Parr v.* *Hamnes,* 303 Minn. 333, 228 N.W.2d 234 (1975); and *Vanden Broucke v. Lyon County,* 301 Minn. 399, 222 N.W.2d 792 (1974).

considered assumed risk as part of contributory negligence. The case involved a snowmobile passenger, but one with limited experience with snowmobiles. The snowmobile driver in *Olson* did not exhibit the clearly careless driving conduct evidenced here. Unlike the case here, *Olson* involved no evidence of negligence of the passenger.[2]

Viewing the evidence in the light most favorable to the jury's finding that respondent Isker was 17% at fault, reasonable minds could differ about the jury's conclusion, and it cannot be set aside as a matter of law. *Waite*, 352 N.W.2d at 21.

### DECISION

We reverse the judgment notwithstanding the verdict, and remand to the trial court with instructions to reinstate the jury's verdict.

Reversed and remanded.

---

**2.** We have also examined *Lambertson v. Cincinnati Corporation,* 312 Minn. 114, 257 N.W.2d 679 (1977). The case arose after the holding in *Springrose,* and the Supreme Court reiterated the established, restrictive doctrine on assumption of risk. The decision, however, was confined to limits on a defendant's rights for an instruction on assumption of risk. The plaintiff did not challenge a finding of 15 percent contributory fault, and the court did not decide what kinds of evidence on assumed risk might be sufficient to sustain such a finding.