Kurt EISCHEN, et al., Appellants,

v.

CRYSTAL VALLEY COOPERATIVE,
defendant and third party
plaintiff, Respondent,

v.

Dan Eischen, third party defendant,
Respondent.

No. A13–0104.

Court of Appeals of Minnesota.

Aug. 5, 2013.

John M. Riedy, Nicholas J. Maxwell, Maschka, Riedy & Ries, Mankato, MN, for appellants.

Richard W. Sobalvarro, Matthew W. Moehrle, Rajkowski Hansmeier, Ltd., St. Cloud, MN, for respondent Crystal Valley Cooperative.

Paul N. Muske, Muske, Muske & Suhroff, Springfield, MN, for respondent Dan Eischen.

Considered and decided by HUDSON, Presiding Judge; STONEBURNER, Judge; and SCHELLHAS, Judge.

## OPINION

SCHELLHAS, Judge.

Appellants argue that the district court erroneously dismissed their negligence claim against respondent on summary judgment based on the court's application of the primary-assumption-of-risk doctrine. We agree, and we reverse and remand for trial.

## FACTS

Appellants Kurt Eischen and JoAnn Eischen (Eischens) sued respondent Crystal Valley Cooperative, alleging that Crystal Valley's negligence caused Kurt Eischen to suffer injuries on July 1, 2010, including pain, disfigurement, and disability, and caused JoAnn Eischen to suffer loss of companionship and society with her husband, Kurt Eischen. Eischens allege that Crystal Valley caused those injuries by negligently training and supervising its employees and by supplying its employees with chains. Crystal Valley attached the chains to a tractor to tow a self-propelled sprayer that was stuck in a farm field that Kurt Eischen and his son, Matt Eischen, owned or leased together and farmed. In response to Eischens' complaint, Crystal Valley raised the defense of primary assumption of risk and also commenced a third-party action against Dan Eischen, another son of Eischens, alleging that his negligent operation of a tractor caused Eischens' injuries and that, if Crystal Valley were found negligent, it would be entitled to contribution and/or indemnity from Dan Eischen.

The following facts are from deposition testimony of Kurt Eischen, Dan Eischen, and Crystal Valley employees. Kurt Eischen grew up on a farm and has farmed his entire life. At the time that he sustained his injuries, he owned or rented 800 acres of tillable ground and farmed an additional 320 acres with his three sons, including Dan Eischen.

In 2010, Kurt Eischen contracted with Crystal Valley to fertilize a portion of his farm land. On July 1, Crystal Valley dispatched several employees and an approximately 30,000–pound liquid-fertilizer sprayer to Kurt Eischen's farm. A Crystal Valley employee operated the sprayer. The sprayer twice became stuck in the field. When the sprayer first became stuck, Crystal Valley called Matt Eischen, asking that a tractor be brought to the field. Matt Eischen called Kurt Eischen, who called Dan Eischen, who brought his tractor to the field to pull the sprayer free. To pull the sprayer free, the Crystal Valley employees used two 3/8–inch chains

supplied by Crystal Valley. Crystal Valley employees hooked the two chains to the sprayer. Because of concern about damaging the sprayer with the tractor, a Crystal Valley employee and Kurt Eischen locked the chains to a loop on the end of a tow rope to increase the distance between the tractor and the sprayer. Kurt Eischen supplied the tow rope. To pull the sprayer free, Dan Eischen backed the tractor toward the sprayer and Kurt Eischen hooked the tow rope to the tractor.

To extricate the sprayer in the field the first time it became stuck, Kurt Eischen stood between the tractor and the sprayer, held the rope and chains off the ground, and signaled Dan Eischen to drive the tractor forward to remove the slack and create "a little tension." Dan Eischen did so. Kurt Eischen then moved out of the way and signaled Dan Eischen with his hand to drive the tractor forward. At the same time, a Crystal Valley employee attempted to drive the sprayer. The parties successfully freed the sprayer, and those present unhooked the equipment.

While using the same procedure, the parties attempted to free the sprayer the second time it got stuck, but a chain snapped and struck Kurt Eischen below his right knee, resulting in serious injuries that required a two-week hospitalization, more than five operations, and a nerve graft. Kurt Eischen testified at his deposition over a year and a half later that he continued to farm but could not move his right foot, had ongoing pain, and wore a brace on his right leg.

The parties dispute the cause of the injuries that Kurt Eischen sustained during the parties' second attempt to free the stuck sprayer. Among other facts, they dispute Kurt Eischen's location when he signaled to Dan Eischen to move the tractor forward; they dispute how much Dan Eischen accelerated in response to Kurt Eischen's hand signal before the chain snapped; and they dispute whether the chains that Crystal Valley supplied were defective. Crystal Valley moved for summary judgment solely on the basis that Kurt Eischen primarily assumed the risk of his injuries.[1] The district court granted summary judgment to Crystal Valley and dismissed Eischens' negligence claim.

This appeal follows.

## ISSUE

Did the district court properly apply the primary-assumption-of-risk doctrine to bar Eischens' negligence claim against Crystal Valley?

## ANALYSIS

An appellate court "review[s] de novo the district court's grant of summary judgment to determine whether genuine issues of material fact exist and whether the district court erred in applying the law." *Ruiz v. 1st Fid. Loan Servicing, LLC,* 829 N.W.2d 53, 56 (Minn.2013). An appellate court "view[s] the evidence in the light most favorable to the party against whom summary judgment was granted." *McKee v. Laurion,* 825 N.W.2d 725, 729 (Minn. 2013).

On appeal, Crystal Valley's only argument is that Kurt Eischen primarily assumed the risk of his injury and therefore relieved Crystal Valley of any duty to him. "Primary assumption of the risk completely negates a defendant's negligence" by "negat[ing] the defendant's duty of care to the plaintiff." *Daly v. McFar-*

---

1. Dan Eischen neither supported nor opposed the motion and did not participate in the summary-judgment hearing. But, in his answer to Crystal Valley's third-party complaint against him, Dan Eischen supported Eischens' negligence claim against Crystal Valley, alleging that Crystal Valley "was negligent as is alleged in [Eischens'] Complaint."

*land,* 812 N.W.2d 113, 119 (Minn.2012) (quotation omitted). "Ordinarily, whether a person has knowledge that will permit the application of the defense of assumption of risk is a jury question, at least where there is conflicting evidence or evidence from which different inferences may be drawn." *Ganser v. Erickson,* 279 Minn. 235, 237, 156 N.W.2d 224, 226 (1968) (quotation omitted); *see also Schroeder v. Jesco, Inc.,* 296 Minn. 447, 452, 209 N.W.2d 414, 418 (1973) ("Many cases have held or recognized that the assumption-of-risk defense was a question for the jury where the defendant's negligent conduct occurred after the plaintiff assumed the risk."); *Rausch v. Julius B. Nelson & Sons, Inc.,* 276 Minn. 12, 21, 149 N.W.2d 1, 7 (1967) ("We have quite uniformly applied the rule that whether a person assumed the risk of a given situation is a question for the jury unless the evidence is conclusive."). "Only where the facts are undisputed and reasonable [persons] can draw but one conclusion does the issue of assumption of the risk become a question of law." *Schroeder,* 296 Minn. at 451, 209 N.W.2d at 417.

■ "To recover for a claim of negligence, a plaintiff must prove (1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) that the breach of the duty of care was a proximate cause of the injury." *Domagala v. Rolland,* 805 N.W.2d 14, 22 (Minn.2011). "Before a court considers assumption of risk, it should first determine whether the defendant owed a duty to the plaintiff." *Baber v. Dill,* 531 N.W.2d 493, 495 (Minn.1995).

### Duty of Care

The district court concluded that "the doctrine of primary assumption of risk applies to the direct cause of the accident in this case and the doctrine is a complete bar to recovery." Noting that primary assumption of risk is "where a plaintiff knowingly and voluntarily encounters a hazard" and that "primary assumption of the risk is not a common doctrine utilized by Minnesota courts to dispose of negligence claims on summary judgment and is normally confined to activities such as sporting events which, by their very nature, contain incidental risks of injury," the court "conclude[d] that removing a stuck farm vehicle from a field by a farmer who has spent his whole life engaging in farm activity is another such instance where primary assumption of risk is applicable." Although the court did not analyze whether Crystal Valley owed a duty to Kurt Eischen and, if so, the breadth of the duty, it suggested the existence of a duty by stating that Eischens "have not provided substantial evidence regarding [Crystal Valley] *falling short of its use of reasonable care* other than the general averment that the chain used in the accident was not sufficient and the employees should have been more properly trained to deal with the problem." (Emphasis added.)

Eischens allege in their complaint that Crystal Valley owed Kurt Eischen a duty of care in its training and supervision of its employees and its provision of chains for use in freeing the sprayer that was stuck in the field. In their brief, Eischens state that "[i]n this case, it is *undisputed* that [Crystal Valley] owed [ ] Kurt Eischen a *duty of reasonable care.*" (Emphasis added.) In opposition to summary judgment, Eischens submitted an affidavit of their agricultural-safety expert, who opined that Crystal Valley should have trained its employees to take charge of the crew and equipment involved in freeing the stuck sprayer; Crystal Valley should have provided its employees information about the towing capacity of chains it supplied to its employees; Crystal Valley should have taught its employees not to use "steel chains or other metal tow devices in conjunction with nylon tow ropes, unless the towing capacity of the steel chains is great-

er than the towing capacity of the tow rope"; Crystal Valley should have moved all personnel involved at least two lengths of the chain or rope away from the chain or rope used; and Crystal Valley should have placed a "heavy coat, blanket or tarp over the chain or rope to decrease the risk of the rope or chain flying out of control if it breaks." But Eischens provided no analysis in the district court or on appeal about the legal basis of Crystal Valley's duty to Kurt Eischen or what it encompasses. Similarly, in the district court, Crystal Valley merely stated in its legal memorandum in support of summary judgment that Kurt "Eischen expressly manifested a consent to relieve Crystal Valley of *any duty which it might have owed ... Eischen.*" (Emphasis added.) And, on appeal, Crystal Valley does not argue that it lacked a duty to Kurt Eischen apart from arguing that it is not liable to Eischens based on Kurt Eischen's primary assumption of risk.

■ "A reviewing court must generally consider only those issues that the record shows were presented and considered by the trial court in deciding the matter before it." *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (quotation omitted). We are left with uncertainty about whether the district court properly determined that Crystal Valley owed a duty to Kurt Eischen before it considered the doctrine of primary assumption of risk. But, "[b]efore a court considers assumption of risk, it should first determine whether the defendant owed a duty to the plaintiff." *Baber,* 531 N.W.2d at 495. *See Grady v. Green Acres, Inc.,* 826 N.W.2d 547, 550 (Minn.App.2013) ("The first step in determining whether primary assumption of the risk applies is to determine whether the defendant owed a duty to the plaintiff." (quotation omitted)); *see also Glorvigen v. Cirrus Design Corp.,* 816 N.W.2d 572, 582 (Minn.2012) ("If no duty exists, it is error for the district court to submit the negli-

gence claim to the jury."). We therefore determine whether Crystal Valley had a duty of care to Kurt Eischen to supervise its employees and provide proper equipment.

■ Although "Minnesota law does not recognize a cause of action for negligent training," *Johnson v. Peterson,* 734 N.W.2d 275, 277 (Minn.App.2007), "a contractor owes his contractee a duty to use due care in the performance of his undertaking," *Brasch v. Wesolowsky,* 272 Minn. 112, 117, 138 N.W.2d 619, 623 (1965) (citing *Pac. Fire Ins. Co. v. Kenny Boiler & Mfg. Co.,* 201 Minn. 500, 503, 277 N.W. 226, 228 (1937) ("Where one person owes another a contractual duty to act, the law imposes upon the person owing that duty the further duty of acting with due care in the performance of his contract so as not to injure the contractee's person or property.")). Moreover, "general negligence law imposes a general duty of reasonable care when the defendant's own conduct creates a foreseeable risk of injury to a foreseeable plaintiff." *Domagala,* 805 N.W.2d at 23. Similarly, "[n]egligent supervision is the failure of an employer to exercise ordinary care in supervising the employment relationship so as to prevent foreseeable misconduct of an employee from causing harm to others." *Olson v. First Church of Nazarene,* 661 N.W.2d 254, 264–65 (Minn. App.2003) ("[N]egligent supervision derives from the doctrine of respondeat superior, so that a plaintiff must prove that the employee's action occurred within the scope of employment."); *see also D.M.S. v. Barber,* 645 N.W.2d 383, 390 (Minn.2002) ("Under the well-established principle of respondeat superior, an employer is vicariously liable for the torts of an employee committed within the course and scope of employment.").

■ Crystal Valley's plant operator, who was responsible for maintaining its

equipment—including freeing its stuck equipment—testified that "[e]verybody will be stuck at some point"; towing stuck equipment is "the most dangerous thing we do" and "always [involves] a danger"; and "[e]verybody knows" that "[a]nytime you hook anything together, it's risky." He further testified that, when Crystal Valley needed to tow stuck equipment, "[u]sually the farmer brings out a tractor" and Crystal Valley then uses either the farmer's chains or its own. We conclude that Crystal Valley, as a contractor hired by Kurt Eischen to spray fertilizer with its own equipment, owed Kurt Eischen a duty to use due care in supervising its employees involved in the service for hire and supplying its employees with safe and proper equipment.

Because we have determined that Crystal Valley owed Kurt Eischen a duty to use reasonable care, we consider whether the primary-assumption-of-risk doctrine negated Crystal Valley's duty of care to supervise its employees and supply its employees with safe and proper equipment.

### Primary–Assumption–of–Risk Doctrine

"The doctrine of primary assumption of risk applies only where parties have voluntarily entered a relationship in which plaintiff assumes well-known, incidental risks." *Daly,* 812 N.W.2d at 119 (quotations omitted). As to the risks assumed, "the defendant has no duty to protect the plaintiff and, thus, if the plaintiff's injury arises from an incidental risk, the defendant is not negligent." *Id.* (quotations omitted). Application of the primary-assumption-of-risk doctrine is "dependent upon the plaintiff's manifestation of consent, express or implied, to relieve the defendant of a duty" and "not dependent upon the wisdom or reasonableness of the plaintiff's consent." *Id.* at 120 (quotation omitted).

The primary-assumption-of-risk doctrine is limited to certain types of circumstances. *Id.* "One of the few instances where primary assumption of risk applies is in cases involving patrons of inherently dangerous sporting events." *Wagner v. Thomas J. Obert Enters.,* 396 N.W.2d 223, 226 (Minn.1986). "A finding of primary assumption of risk is a rare thing in Minnesota." *Renswick v. Wenzel,* 819 N.W.2d 198, 205 (Minn.App.2012), *review denied* (Minn. Oct. 16, 2012).

Here, the district court stated that

When Kurt Eischen voluntarily placed himself between the Sprayer and the [tractor] while tending to the tow rope and chain, he should have known four things could happen, three of which would put in [sic] him in harm's way: 1. The chain or rope could break; 2. The chain or rope could break a piece of the towing vehicle off and slingshot backwards; 3. The chain or rope could break a piece of the stuck vehicle off and slingshot forward; or 4. The stuck vehicle could be pulled out successfully without incident. Unfortunately, in this case, the chain itself gave way. But just as the spectator at a baseball game never knows when and if a foul ball will strike him or her before they are able to take cover, Kurt Eischen in this case cannot feasibly assume a successful tow, even with the best of equipment available. . . .

Given this knowledge, Kurt Eischen nonetheless voluntarily chose to place himself in the danger zone between the two vehicles as he signaled Dan Eischen to snug the connectors. The fact that [Crystal Valley]'s employees were present during this procedure or that the same chain held up earlier in the day does not absolve the risk at issue in this case.

Eischens challenge the district court's ruling, arguing that Kurt Eischen did not fully appreciate the dangerousness of his participation in freeing the stuck sprayer.

 For the doctrine of primary assumption of risk to apply, the plaintiff must have "*actual knowledge,*" not merely "constructive notice or knowledge," of "the *particular risk or danger*" and not merely of "a general risk." *Wegscheider v. Plastics, Inc.,* 289 N.W.2d 167, 170 (Minn.1980) (emphasis added) (quotation omitted) ("The mere fact that the plaintiff would, in the exercise of ordinary care, have known or appreciated the danger is not sufficient." (quotation omitted)); *cf. Seidl v. Trollhaugen, Inc.,* 305 Minn. 506, 509, 232 N.W.2d 236, 240–41 (1975) (concluding that district court properly declined to submit to the jury defendant's secondary-assumption-of-risk argument when defendant failed to "introduce evidence as to plaintiff's knowledge of the specific risk of being hit on the slopes by other skiers" and instead "established only that plaintiff was aware of 'inherent risks' in skiing"). "No risk is assumed of which plaintiff was ignorant." *Parr v. Hamnes,* 303 Minn. 333, 338, 228 N.W.2d 234, 238 (1975) (quotation omitted).

 Viewing the undisputed record evidence in the light most favorable to Eischens, we conclude that a genuine issue of material fact exists about the extent of Kurt Eischen's actual knowledge of the particular risk or danger he allegedly assumed by assisting Crystal Valley in pulling its sprayer free in the farm field. Undisputed record evidence shows that Kurt Eischen knew about a risk of injury when he stood between the tractor and the sprayer. But the record evidence is not clear or undisputed as to Kurt Eischen's actual knowledge of the particular risk or danger in using the chains that Crystal Valley supplied or in using the chains along with a nylon tow rope. We conclude that a reasonable fact-finder could infer from the evidence that Kurt Eischen did not actually know of the particular risk or danger involved in assisting Crystal Valley in pulling its sprayer free, when he stood between the tractor and the sprayer and signaled Dan Eischen to begin advancing the tractor. *See J.E.B. v. Danks,* 785 N.W.2d 741, 751 (Minn.2010) ("[W]e must resolve conflicting inferences in favor of appellants on this appeal from summary judgment."); *see also Bakhos v. Driver,* 275 N.W.2d 594, 595 (Minn.1979) (concluding that plaintiff did not assume risk of falling from tree that he ascended to remove tree limb when fall resulted from defendant's unforeseen "negligent application of pull" to rope attached to limb and plaintiff, before ascending the tree, lacked "certain knowledge" that defendant's negligence would occur).

 Citing statistics and *Daly,* 812 N.W.2d at 120, Crystal Valley argues that this Court should *conclude* that farming—and more specifically working with a tractor—carries *far more inherent danger than any of the sports spectating events* which have been identified by the Minnesota Supreme Court as being the types of cases most common for application of the doctrine of primary assumption of the risk.

(Emphasis added.) Crystal Valley supports its farming- and sports-injury statistics exclusively with website pages upon which we cannot rely because, although Crystal Valley provided the website links to that material in its summary-judgment memorandum, copies of the material were not filed in the district court and are not in the record on appeal. *See* Minn. R. Civ. App. P. 110.01 ("The papers filed in the trial court, the exhibits, and the transcript of the proceedings, if any, shall constitute the record on appeal in all cases."); *Thiele,* 425 N.W.2d at 582–83 ("An appellate court may not base its decision on matters outside the record on appeal...."). Moreover, although record evidence amply shows that towing stuck farm equipment is dangerous, we conclude that it is not a dangerous activity to which

the primary-assumption-of-risk doctrine applies because the risks incident to towing stuck farm equipment can be successfully avoided. *See Daly,* 812 N.W.2d at 120 (noting that "the 'sport of snowmobiling' was not an 'inherently dangerous sporting' activity to which the doctrine applied because hazards like tipping or rolling could 'be successfully avoided'" and that a "'snowmobile, carefully operated, is no more hazardous than an automobile, train, or taxi'" (quoting *Olson v. Hansen,* 299 Minn. 39, 44, 216 N.W.2d 124, 128 (1974))). While Crystal Valley no doubt disputes his opinion, Eischens' agricultural-safety expert provided numerous applications of "widely recognized safe work procedures which, if followed, can greatly reduce or even eliminate some of the risks to some of the people who would typically be involved in freeing stuck commercial agricultural chemical equipment if the equipment becomes stuck in the mud."

### *Breach and Causation*

An appellate court "may affirm a grant of summary judgment if it can be sustained on any grounds." *Doe v. Archdiocese of St. Paul,* 817 N.W.2d 150, 163 (Minn.2012). And recovery for a negligence claim requires not only the existence of a duty of care but also "a breach of that duty ... and ... that the breach of the duty of care was a proximate cause of the injury." *Domagala,* 805 N.W.2d at 22. But breach and causation questions are ordinarily fact questions, *Gallagher v. BNSF Ry.,* 829 N.W.2d 85, 95 (Minn.App. 2013), and "[t]he proposition is well-established that it is only in the clearest of cases that the question of negligence becomes one of law," *Van Tassel v. Hillerns,* 311 Minn. 252, 256, 248 N.W.2d 313, 316 (1976) (quotation omitted). *See Canada By & Through Landy v. McCarthy,* 567 N.W.2d 496, 505 (Minn.1997) ("The question of negligence is ordinarily a question of fact and not susceptible to summary adjudication.").

We conclude that a genuine issue of material fact exists regarding whether Crystal Valley breached its duty of care to Kurt Eischen and, if so, whether the breach caused Eischens' injuries. This case is not one of those rare cases in which we can conclude as a matter of law that the primary-assumption-of-risk doctrine negated a defendant's duty of care or that a defendant did not breach a duty and did not cause an injury.

### DECISION

The district court erred by concluding that the doctrine of primary assumption of risk applies to bar Eischens' negligence claim against Crystal Valley and granting summary judgment to Crystal Valley. Because genuine issues of material fact exist regarding whether Crystal Valley breached its duty to Kurt Eischen and, if so, whether the breach caused Eischens' injuries, we reverse and remand for trial.

**Reversed and remanded.**