## GARY CARPENTER v. ROGER MATTISON.

219 N. W. 2d 625.

June 21, 1974—No. 44283.

274

*Padden, Dickel, Johannson & Wall* and *Kenneth Johannson,* for appellant.

*Curtis L. Charlson,* for respondent.

Heard before Peterson, Kelly, and Yetka, JJ., and considered and decided by the court.

YETKA, JUSTICE.

Appeal is taken from an order of the District Court of Polk County denying defendant's motion for judgment notwithstanding the verdict or, in the alternative, a new trial. We affirm.

On the night of December 26, 1970, a group of eight snowmobilers, including plaintiff and defendant, were proceeding south in the ditch beside U. S. Highway No. 59 between Plummer and Brooks, Minnesota.

It was a clear night with good snow conditions. The group was traveling at "trail speed" with plaintiff in the lead position, followed by his wife. An approach road crosses the ditch at a point about 1 mile north of Brooks. Several witnesses testified that plaintiff reduced his speed to 10 to 15 miles per hour to cross this approach. After crossing, plaintiff proceeded some 20 to 60 feet beyond the approach road and stopped his machine. (There is disputed testimony as to the distance between the approach and the place where plaintiff stopped.)

Several witnesses testified that as plaintiff crossed the approach defendant increased his speed, passed plaintiff's wife,

and hit the slope of the approach at an estimated speed of 45 to 50 miles per hour. This caused defendant's snowmobile to leave the ground at the crest of the approach. After landing, defendant's snowmobile struck plaintiff, causing severe injuries to plaintiff's leg. It should be noted that defendant disputes the estimate of his speed, that plaintiff's feet were on the running board of his snowmobile, and that plaintiff's tail lights were working properly. However, there is ample testimony that plaintiff's lights were on and working when the accident occurred.

There was testimony that it was customary to slow down for approaches. There was also testimony that plaintiff could be seen in his stopped position *south* of the approach by the other snowmobilers before they crossed this approach, i.e., from the *north* side of the approach.

Plaintiff brought this action seeking recovery for the injuries sustained in the collision. The jury found defendant 75 percent negligent and plaintiff 25 percent negligent. Following the denial of his post-trial motions, defendant appealed.

Defendant contends alternatively that the record does not contain sufficient evidence to establish the duties owed by one operating a snowmobile to another or that, if those duties were established, the evidence is insufficient to support the jury's finding that these duties were breached by defendant; that Minn. St. 84.87, subd. 2, is unconstitutionally vague; that plaintiff, as a matter of law, assumed the risk of his injury; that the trial court erred in admitting lay opinion to establish the speed of defendant's snowmobile; that the trial court committed reversible error in admitting opinions concerning fault and responsibility for the collision; and that the trial court improperly allowed medical expert fees of $250 under the applicable statute and rules.

We find all of these assignments of error without merit.

1. Defendant contends that plaintiff failed to offer and to introduce sufficient evidence to prove the duties owed by one operating a snowmobile to another. In support of this contention, defendant states in his brief:

"* * * We believe the Court had to consider that all of these machines were being driven at essentially the same speed, for essentially the same distance, in essentially the same manner."

This assertion is incorrect. The record contains testimony of several witnesses who stated that defendant was *not* driving at the same speed and in the same manner as the others in the group, i.e., defendant accelerated his speed, cut in front of plaintiff's wife, and hit the approach at approximately 50 miles per hour, causing his snowmobile to become airborne.

The jury had ample evidence to conclude that defendant's speed in going over an approach at night was not in the exercise of reasonable care. The jury could also consider the testimony that if defendant had exercised reasonable care he could have observed plaintiff *before* jumping the approach. Conversely, if the jury believed that plaintiff could not be seen from the north side of the approach, they could conclude that defendant was negligent in jumping "blind."

There is little merit to defendant's contentions that the evidence is insufficient to support a finding that defendant breached his duty to plaintiff and that the verdict is unsupported by the evidence. The law is well settled in this jurisdiction that in examining a verdict on appeal the evidence must be considered in the light most favorable to the prevailing party and the verdict must be sustained if it is possible to do so on any reasonable theory of evidence. The verdict should not be disturbed unless it is manifestly and palpably contrary to the evidence. Hestad v. Pennsylvania Life Ins. Co. 295 Minn. 306, 204 N. W. 2d 433 (1973) ; see also, Stapleman v. St. Joseph the Worker, 295 Minn. 406, 205 N. W. 2d 677 (1973) ; Krengel v. Midwest Automatic Photo, Inc. 295 Minn. 200, 203 N. W. 2d 841 (1973) ; Thill v. Modern Erecting Co. 292 Minn. 80, 193 N. W. 2d 298 (1971). A review of the record strongly supports a conclusion that defendant has failed to overcome this strict standard in challenging the verdict.

■  Defendant contends that Minn. St. 84.87, subd. 2, is unconstitutionally vague because the terms "unsafe" and "harassing" are not susceptible of a reasonable construction. In support of this proposition he cites only 17B Dunnell, Dig. (3 ed.) § 8995, with no reference to specific cases. A complete reading of the statute convinces us his contention is without merit.

■  Defendant contends that plaintiff in this case assumed the risk of injury as a matter of law.

This court has recently held that the operation of a snowmobile does not involve primary assumption of risk but rather secondary assumption of risk. Olson v. Hansen, 299 Minn. 39, 216 N. W. 2d 124 (1974). In order to sustain the contention that plaintiff assumed the risk in the latter sense, defendant must *first* meet the requirements of Coenen v. Buckman Building Corp. 278 Minn. 193, 204, 153 N. W. 2d 329, 338 (1967) :

"In order to invoke the doctrine of assumption of risk, it is essential that the risk or danger shall have been known to, and appreciated by, plaintiff. No risk is assumed of which plaintiff was ignorant. Logically, plaintiff cannot make an *intelligent choice* to confront a risk if he does not *actually know* of the danger, or know such facts as would in law charge him with knowledge of the danger and appreciation thereof." (Italics supplied.)

Secondly, to establish that plaintiff assumed the risk as a matter of law, defendant must show that the facts proving assumption of risk are undisputed and reasonable men can draw but one conclusion therefrom. Rudd v. Village of Bovey, 252 Minn. 151, 155, 89 N. W. 2d 689, 692 (1958).

A review of the record in the case at bar discloses little factual support for the position that plaintiff was guilty of assumption of risk as a matter of law. Defendant contends that plaintiff failed to have his feet on the running board of his snowmobile when the collision occurred. However, this factual conclusion is *not* undisputed in the record. Moreover, the evidence tends to show that plaintiff had little reason to suspect that defendant

would cross the approach at 50 miles per hour, thereby becoming airborne and severely restricting his ability to control his machine. "Ordinarily assumption of risk is for [the] jury." 13B Dunnell, Dig. (3 ed.) § 7041b, and cases cited under note 96. The facts of the instant case bring it within this rule.

■ Defendant argues that the trial court erred in admitting lay opinion evidence of the speed of defendant's snowmobile.

The law is well settled in this state that lay opinion evidence of automobile speed is admissible. Sanchez v. Waldrup, 271 Minn. 419, 136 N. W. 2d 61 (1965); Daugherty v. May Brothers Co. 265 Minn. 310, 121 N. W. 2d 594 (1963). This rule has also been applied to trains. Beecroft v. G. N. Ry. Co. 134 Minn. 86, 158 N. W. 800 (1916); Zenner v. G. N. Ry. Co. 135 Minn. 37, 159 N. W. 1087 (1916). In Schlukebier v. LaClair, 268 Minn. 64, 72, 127 N. W. 2d 693, 698 (1964), this court stated:

"A witness need not be an expert to estimate the speed of a *moving vehicle,* [citations omitted] and we have held on numerous occasions that any person of reasonable intelligence and ordinary experience in life may, without proof of further qualification, express an opinion as to how fast an automobile *or other moving object* which has come under his observation was going at a particular time. [Citations omitted.]" (Italics supplied.)

The above language seems to dictate application of the rule to objects other than automobiles. Further, there appears to be no rational basis for refusing to extend this rule to snowmobiles.

Similarly, defendant's argument that proper foundation was not established for these opinions is not supported by the record. This was not a case of a split-second observation by excited witnesses. In this case, the witnesses, experienced snowmobilers one of whom had a speedometer, had an opportunity on a clear night from a reasonable vantage point to observe the speed of defendant's snowmobile.

■ Defendant cites as prejudicial error the admission into evidence of certain portions of a pretrial statement containing opinions as to fault and responsibility.

During cross-examination of plaintiff's witness Daniel Seibel, counsel for defendant introduced a pretrial statement taken from this witness. Defendant offered this statement in its entirety and used it to impeach the testimony of Mr. Seibel. On redirect examination, plaintiff's counsel made reference to a portion of this statement in which the witness had stated that "he [defendant] was traveling too fast * * *. I believe [defendant] was at fault because of his speed." Defendant objected to this testimony as calling for a legal conclusion and argued it was inadmissible, "whether * * * made on the witness stand or [in] the statement."

It is beyond question that normally lay opinions concerning fault and responsibility are inadmissible at trial, even when introduced for impeachment purposes. Jackson v. Wyatt Bros. Cement Co. 295 Minn. 145, 203 N. W. 2d 360 (1972). However, plaintiff argues that the case at bar is distinguishable from the Jackson case because here the party who introduced the pretrial statement containing the inadmissible opinions is the party now objecting to their admission. In short, plaintiff contends that defendant, by introducing this pretrial statement, has waived his right to object to any portion of its content.

The rule is well settled in this jurisdiction that objection to inadmissible evidence must be made at the time such evidence is introduced. Livermore, Minnesota Evidence (1972 ed.) § 51; 1B Dunnell, Dig. (3 ed.) § 405. This rule can be logically applied to the case at bar. Defendant, by offering the pretrial statement in issue, certainly was not objecting to its admission at the time of introduction as the above-stated rule requires.

It should be noted that defendant could have requested the court to instruct the jury to consider the pretrial statement at issue for only the limited purpose for which it was introduced, to impeach Mr. Seibel's credibility. It was defendant's duty to request this instruction. See, Erickson v. Paulson, 251 Minn. 183, 87 N. W. 2d 585 (1957). Having introduced the entire statement without requesting the cautionary instruction, defendant is not

in a position to complain of its later use by plaintiff. But even if the court erred in admitting the pretrial statement in its entirety, this did not constitute reversible error.

■ The final issue in this appeal is whether or not Part I, Rule 11, District Court Code of Rules, (prior to its amendment in 1973)[1] and Minn. St. 357.25 prohibit the court from allowing expert witnesses' fees in excess of $100 per day. This question is one of first impression in this court.

Part I, Rule 11, District Court Code of Rules, provided:

"On affidavit showing that a fee equalling, or exceeding that has been billed, the clerk may tax $25.00 per day for an expert witness fee as a disbursement in a civil case, subject to increase or decrease by a judge on appeal. The maximum amount which *normally* will be allowed by a judge on appeal is $100.00 per day and *normally* $100.00 per day shall be allowed if that amount is a customary charge by similar experts in the community. The judge in setting the fee on appeal *is governed by the provisions of M.S.A. Sec. 357.25.*" (Italics supplied.)

The use of the term "normally" (italized above) implies that the $100 per day figure was not an inflexible maximum amount under the rule prior to its amendment.[2] This view is further buttressed by the express adoption of Minn. St. 357.25 as governing the judge in setting the fee. This statutory provision sets no maximum limits on the awardable amount, but expressly vests the trial judge with discretion to allow "such fees or compensation as, in his judgment may be just and reasonable." In Senneka v. Bickle, 199 Minn. 345, 271 N. W. 813 (1937), this court held that a discretionary award of expert witness fees will be disturbed only in cases where abuse of discretion is apparent. Defendant has not shown such abuse in the instant case. The trial

---

[1] Part I, Rule 11, District Court Code of Rules was amended on June 13, 1973. Since the present case was tried before the amendment became effective, the prior rule governs and all references are to it.

[2] The word "normally" does not appear in the present rule, but the omission has no significance for this case at least.

court had opportunity to hear the testimony and to base its decision, not only on the actual testimony, but on the rather extensive and time-consuming pretrial preparation required in order to give this testimony. In view of this court's traditional reluctance to second-guess the exercise of discretionary duties by our trial courts, defendant cannot prevail on this issue.

Affirmed.