WOLLMAN, Chief Judge.
In this diversity action, Christopher Alan Walk appeals the district court’s[2] adverse grant of summary judgment in his product liability action for personal injuries suffered in a workplace accident. We affirm.
I.
Walk worked for the Continental Clay Company (Continental), as a clay loader or “mixer.” Continental mixes and sells various types of clay for commercial use. Walk began working as a mixer in August of 1995 and was responsible for mixing twenty to thirty batches of clay per day.
A mixer combines dry material and water to form moist clay. That clay is then carried by conveyor belt into the trough of the pug mill,[3] which was manufactured by Starkey Machinery (Starkey). The clay is then fed into an auger, which moves the clay down the trough and into a vacuum tube. When the clay emerges from the vacuum tube, it is bagged and boxed for shipment. After each batch of clay is finished, the sides of the trough are cleaned and excess clay is removed. To complete this process, Walk would disengage the auger and remove the protective cover on the trough. He would then use a scraper to push the excess clay toward the vacuum tube. He would then engage the auger and scrape the residual clay from between the auger blades.
On May 20, 1996, while cleaning the pug mill trough, Walk’s hand became entangled in the auger, which pulled his arm into the machine. Co-workers and medical personnel were unable to remove Walk’s arm from the machinery, and it was necessary to amputate the arm at the site of the accident.
Walk filed suit against Starkey, alleging negligence and strict liability based upon the unreasonably dangerous condition of the pug mill. The district court granted Starkey’s motion for summary judgment, holding that Walk’s claim was barred by the doctrine of primary assumption of the risk.
II.
We review a grant of summary judgment de novo. See Sperry v. Bauermeister, Inc., 4 F.3d 596, 597 (8th Cir.1993). In so doing, “[w]e must decide whether the record, when viewed in the light most favorable to [Walk], the non-moving party, shows that there is no genuine issue of material fact” and that Starkey is entitled to judgment as a matter of law. See id. (citing Cole v. Bone, 993 F.2d 1328, 1331 (8th Cir.1993)). When the material *939 facts are undisputed, and “reasonable people can draw only one conclusion, assumption of the risk is a question of law for the court.” Andren v. White-Rodgers Co., 465 N.W.2d 102, 105 (Minn.Ct.App.1991). In this diversity case, we review the district court’s interpretation of Minnesota law de novo. See Salve Regina College v. Russell, 499 U.S. 225, 231, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991); Kaplon v. Howmedica, Inc., 83 F.3d 263, 266 (8th Cir.1996).
The sole issue in this appeal is whether the district court properly applied the doctrine of primary assumption of the risk. “[P]rimary assumption of the risk applies when a plaintiff manifests his or her acceptance of the risk and his or her consent ‘to undertake to look out for himself and relieve the defendant of the duty.’” Kraft v. Ingersoll-Rand Co., 136 F.3d 584, 586 (8th Cir.1998) (internal quotations omitted). The doctrine is applicable to inherently risky activities. See T.H.S. Northstar Assocs. v. W.R. Grace and Co., 66 F.3d 173, 176 (8th Cir.1996). Thus, “[t]he classes of cases involving an implied primary assumption of risk are not many.” Id. at 176 (quoting Springrose v. Willmore, 292 Minn. 23, 192 N.W.2d 826, 827 (Minn.1971)). “The elements of primary assumption of the risk are that the plaintiff 1) knew of the risk; 2) appreciated the risk; and 3) voluntarily chose to accept that risk, even though he or she had a choice to avoid it.” Kraft, 136 F.3d at 586 (citing Andren, 465 N.W.2d at 104-05).
In Andren, the court found that primary assumption of the risk applied when the plaintiff lit a cigarette and caused a liquid propane gas explosion. 465 N.W.2d at 106. It found that the plaintiff demonstrated knowledge of the risk by testifying that he knew gas could explode. He appreciated the risk because he acknowledged that he smelled gas prior to the explosion. Finally, the plaintiff voluntarily chose to accept the risk by lighting a cigarette in the gas-filled room when he could have chosen not to smoke. See id. at 105. See also Goodwin v. Legionville Sch. Safety Patrol Training Ctr., Inc., 422 N.W.2d 46, 50 (Minn.Ct.App.1988) (finding that a volunteer primarily assumed the risk by choosing “to encounter a well-known incidental risk of roofing; slipping and falling off the roof’); cf. Gilbertson v. Tryco Mfg. Co., 492 F.2d 958, 961 (8th Cir.1974) (finding that pre-Springrose assumption of the risk was not present because plaintiff did not choose to operate a fertilizer-spraying machine with full knowledge that its operation was dangerous).
Walk argues that his case is analogous to those cases in which primary assumption of the risk has been held to be inapplicable. In Peek v. Ostrom, the Minnesota Supreme Court found that an employee did not primarily assume the risk when he injured his hand while attempting to clean a running mill-saw. 107 Minn. 488, 120 N.W. 1084, 1085 (Minn.1909). In finding the doctrine inapplicable, the court stressed plaintiffs limited experience with sawmills. See id. at 1084 (noting that the plaintiff was injured on his first day of work, was twenty years old, and had limited work experience). Because the plaintiff had such limited experience, the court found that he could not have appreciated the risk. See id. at 1085; see also Kraft, 136 F.3d at 586 (weighing fact that plaintiff had less than one week experience against applying primary assumption of the risk); Johnson v. Southern Minn. Mach. Sales, Inc., 442 N.W.2d 843, 848 (Minn.Ct.App.1989). In Johnson, the court found that because the eighteen-year-old inexperienced plaintiff had witnessed his shop teacher and foreman engage in the same activity that eventually injured him, he could not have primarily assumed the risk. See id.
Unlike the plaintiffs in Peek, Kraft, and Johnson, Walk was experienced. He accepted his first job in a clay plant in 1983 and had spent approximately ten years working in different phases of clay production at the time of the accident. He had been working in his current position for more than ten months. Although he had *940 observed his co-workers and supervisor use the same cleaning method, he stated in his deposition that no one had instructed him to use this method to clean the pug mill. He also stated that he knew this method was dangerous, was told that it was dangerous, and that based upon his own experience he believed that the trough could be adequately cleaned with the auger disengaged.
Moreover, Walk knew that the auger was running and that it was capable of injuring him. Indeed, he acknowledged that his fingers had been nicked by the auger blades on at least two earlier occasions while he was cleaning the trough while the auger was running. In Kraft, we stated that the plaintiffs belief that the equipment was disconnected from its power source was the most significant factor making primary assumption of the risk inapplicable. 136 F.3d at 686. Here, it is undisputed that Walk placed his hand in the trough knowing that the auger was engaged and knowing that the moving blades posed a substantial risk of injury to him. Accordingly, the district court did not err in holding that Walk had assumed the risk of such an injury.
The judgment is affirmed.

. The Honorable Donald D. AIsop, United States District Judge for the District of Minnesota.

.A pug mill is a clay-working machine that removes the air from clay, shaping it into a final, usable form called a pug.